JOHN J. HAYES, plaintiff in error, *v.* THE PEOPLE, defendants in error.

Form of an indictment for bigamy.

Under an indictment for bigamy, strict proof of marriage is necessary. It cannot be established by inference, or cohabitation, or admissions only.

Marriage is merely a civil contract, and may be entered into in any manner which clearly evinces the intention of the parties.

Where, on the trial of an indictment for bigamy, it appeared that the prisoner, who had been previously married, and whose wife was still living, agreed to marry J. W., and procured a person dressed as a clergyman to perform the marriage ceremony, at which J. W. agreed to take the prisoner for her husband, and the prisoner agreed to take J. W. for his wife, and the person officiating pronounced them man and wife, and they afterwards cohabited together as such, it was *held* that the prisoner was guilty of bigamy, whether the person officiating as a clergyman was in fact what he was represented to be, or was procured to personate a clergyman for the purpose of deceiving J. W. on that occasion.

AN indictment for bigamy was found against the prisoner, in the following form:

*City and County of New York, ss:*

The jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath, present: That John J. Hayes, late of the first ward of the city of New York, in the county of New York, aforesaid, on the third day of February, in the year of our Lord one thousand eight hundred and forty-five, did marry one Sarah E. Blair, and her, the said Sarah E. Blair, did then and there have for his wife, and that the said John J. Hayes afterward, to wit, on the thirteenth day of September, in the year of our Lord one thousand eight hundred and sixty, at the ward, city and county aforesaid, while he was married to the said Sarah, with force and arms, did feloniously marry and take as his wife one Jane White, and to the said Jane White was then and there married, the said Sarah E. Blair being then and

there living and in full life, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

NELSON J. WATERBURY, *District Attorney.*

The prisoner pleaded not guilty, and the issue came on to be tried before HOFFMAN, Recorder, and a jury, at a Court of General Sessions in the city of New York, in September, 1861.

It was proved on the trial, and also admitted by the prisoner, that he was married to Sarah E. Blair, at the parsonage of St. James' Church, Brooklyn, in February, 1845, by the Rev. Charles Smith, of the Catholic Church, and that the parties so married lived together as husband and wife till May, 1859, and that said Sarah E. Hayes (formerly Miss Blair) was still living, and was then in court.

*Jane White* then testified that she became acquainted with the prisoner in May, 1860, and received several visits from him; that she afterwards, at his request, engaged to marry him; that he hired rooms in Thompson street, near Grand street, in the city of New York, and they went there to live; that he brought in a minister, and they were married in those rooms on the 13th day of September, 1860; that the prisoner told her she must keep the marriage secret, as there was some property coming to him; that he said his mother died in March and left some property, and if the marriage was known he would lose the property; that he showed her the papers, and said there was one house in Myrtle avenue and two in Fulton street, and that she promised to keep the marriage secret till he got the property, and that she had done so; that she had no intimation before her marriage that he was a married man.

The witness further stated that after her marriage to the prisoner, they lived together as man and wife; that she did not know the person who performed the marriage ceremony; that the prisoner told her it was a minister he got, who would not reveal the secret; that it was the Protestant marriage cere-

Hayes *v.* The People.

mony; that no one was present except the prisoner, herself and the clergyman; that she did not know the name of the clergyman, nor where he lived, and had never seen him since he gave her a certificate; that the defendant took the certificate, and she did not know where it was; that the last she saw of it, it was in her trunk in a small box.

On her *cross-examination*, she stated that she first saw the minister in the room; that the prisoner went down, was gone ten minutes, and then came back with the minister; he was dressed like a minister; had on a white necktie; that she did not ask his name; that she could not describe the ceremony; that he took a small book from his pocket, and read the Episcopal form, and asked her if she would take the prisoner for her husband, and she said yes, and he then asked the prisoner if he would have her for his wife, and he said yes, and then declared them man and wife; that she did not think it was necessary to have a witness; that she got the certificate that night; that the heading was printed, and the rest was then filled in by the minister; that the witness cannot read or write; that she had since tried to find the minister, and could not.

Other witnesses were examined on both sides.

After the testimony was closed, and the several counsel had addressed the jury,

The court charged the jury, amongst other things, that marriage in this State is a civil contract and did not require the intervention of minister or magistrate to make it legal; that any present agreement between the parties competent to contract to take each other for husband and wife, is a valid marriage.

That if the jury believed, upon the evidence, that the defendant and Jane White, on the day testified to by her, in the presence of the man represented to be a minister, agreed together to be man and wife, and afterwards lived together as such, the agreement was, in the eye of the law, a sufficient marriage to sustain an indictment for bigamy, the fact that defendant had before that time married Sarah E. Blair, and that she was then living, being admitted; and it was of no

consequence whether the man represented to be a minister was such or not.

To each part of the charge, as above set forth, the defendant's counsel excepted, and requested the court to charge as follows, to wit:

That Hayes was not competent to contract marriage with any person on the 13th day of September, 1860, and a mere agreement on his part on that day to take a woman for his wife, she consenting to take him for her husband, does not constitute a marriage, and a prosecution for bigamy cannot be sustained therefor.

But the court refused so to charge, otherwise than above stated, and to the ruling and refusal the prisoner's counsel excepted.

The jury found the prisoner guilty, and the court sentenced him to imprisonment in State prison at Sing Sing for the term of three years.

The record was removed into this court by writ of error.

*James T. Brady,* for the plaintiff in error, cited 3 *Greenl. Ev.,* § 205; *Parsons on Contracts,* 399.

*Nelson J. Waterbury* (District Attorney), for the defendants in error, cited 1 *Hill,* 270; *Fenton* v. *Reed,* 4 *Johns. R.,* 52; 8 *Paige R.,* 574; 2 *Clinton's Dig.,* 929, "*Marriage;*" *State* v. *Rood,* 12 *Verm. R.,* 396.

*By the Court,* LEONARD, J. Under an indictment for bigamy, strict proof of marriage is necessary. It cannot be established by inference, nor by cohabitation or admissions only. The defendant is never estopped from denying the fact in a criminal case. His conduct may, however, be so wicked as to exclude favorable presumptions in his behalf. In the present case, it was proved that the prisoner introduced to the complainant a person whom he represented to be a minister, and who conducted a marriage ceremony between them as a minister, taking a small book from his pocket and reading the Episcopal form. This person was dressed to represent the

Hayes *v.* The People.

character in which he served; and it was manifest that it was designed by the prisoner that the complainant should believe him to be an ordained minister of the gospel. There was no proof, however, that he was, in fact, a clergyman, or authorized by law to certify a marriage for the purpose of registry. He asked the complainant if she would take the prisoner for her husband, and she answered, yes. The prisoner was asked if he would take the complainant as his wife, and he answered, yes. And the person officiating pronounced them man and wife. Here was every element necessary to constitute the contract of marriage. It was followed by cohabitation. The jury believed it was a reality to the complainant, whatever the prisoner intended. He may have procured some person falsely to represent himself as a minister, with the intent to deceive his victim, and to attain the object of his lust without any marriage.

Such a thing is possible. I see no reason, however, to presume that the prisoner committed another and different crime, in order to acquit him of the one with which he stands convicted here. Marriage, although the most solemn of obligations, is a civil contract, and may be entered into in any manner which clearly evinces the intention of the parties. It is altogether suitable that it should be celebrated in a manner to impress upon the parties and friends its sacred character. The law, as written in the statute, has wisely, I think, omitted to prescribe any form to be observed in entering into this contract.

I think the charge of the recorder was correct. The judgment should be affirmed.